Richardson *vs.* State.

(Decided 10th December, 1886.)

WILLIAM H. RICHARDSON *vs.* THE STATE OF MARYLAND.

*Practice disapproved—Sufficiency of an Indictment for Libel—Form of Conclusion of Indictment—Evidence.*

The consenting by the State to request the Appellate Court before final judgment in a criminal case, to hear questions raised by demurrer to the indictment, and which cannot come regularly before the Court except on writ of error after final judgment, is a practice not to be commended.

An indictment for libel charged the defendant with the intent to bring the administration of justice in the Circuit Court for Baltimore County, by D. F., as Judge of said Court, into hatred and

Richardson *vs.* State.

contempt among the citizens of said County, and to traduce, defame and vilify the said D. F., Judge as aforesaid, by publishing the statement that "He, (meaning thereby the Hon. D. F., Judge as aforesaid,) has violated the State Constitution, and is disqualified; he is liable to impeachment and to indictment," and concluded, "to the great scandal and disgrace of the administration of justice in Baltimore County, and in contempt of the State of Maryland and its laws, and to the evil example of all others in like case offending, and against the peace, government and dignity of the State." On demurrer, it was HELD:

1st. That the indictment sufficiently charged the offense as a libel upon the Judge, and not upon judicial proceedings only.

2nd. That in respect to the conclusion of the indictment, so far as the omission to allege that what had been set forth as published, had redounded to the damage of said Judge, was concerned, it was wholly immaterial; and as to the allegation that it was "to the great scandal and disgrace of the administration of justice in Baltimore County, and in contempt of the State of Maryland and its laws, and to the evil example of all others in like case offending," they were wholly unnecessary, and might be rejected as surplusage.

Allegations in the conclusion of an indictment, beyond the words "against the peace, government and dignity of the State," are immaterial, and may be rejected as surplusage.

On an indictment for libel, evidence offered avowedly, only to show that the defendant had been led into an honest mistake of fact, and thereby was misled into the publication of the alleged libelous charge, is inadmissible under the statute allowing the truth of such charge to be given in evidence in justification, under the general issue. Nothing short of evidence tending to show the truth of the charge, is admissible.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*James A. C. Bond,* for the appellant.

*N. Charles Burke, State's Attorney for Baltimore County,* and *Charles B. Roberts, Attorney-General,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The appellant was indicted for libel, in the Circuit Court for Baltimore County, and was found guilty. At the trial one exception was taken to the exclusion of certain evidence offered in defence which was made the basis of this appeal; and properly speaking the correctness of the Court's ruling on the evidence is the only question legitimately before us. But by agreement of the counsel for the State and defence the ruling of the Court below on the demurrer to the indictment whereby the same was overruled, this Court was to be asked to pass thereon. That question is not regularly before us and could not be, except on writ of error after final judgment in the cause, which has not yet been rendered, the same having been suspended under the statute until the determination of the appeal. In this instance, we will pass on the question raised by the demurrer, in deference to the wishes of the respective counsel, and to save the necessity of a writ of error after final sentence. The practice however in this case by the State, in consenting to request the hearing of the question raised by the demurrer irregularly, cannot be commended, and ought to be discountenanced; therefore our decision of the question must not be taken as a precedent to be quoted, or indication that we will hereafter pass on a like question similarly presented, after this expression of our disapproval of the practice.

The indictment charges the Hon. David Fowler to be a Judge of the Circuit Court for Baltimore County before and at the time of the composing and publication of the "scandalous, malicious and defamatory libel," and at the finding; and that the defendant "well knowing the premises aforesaid, unlawfully and maliciously devising

and intending to bring the administration of justice by the said Fowler, as Judge as aforesaid, in the Circuit Court for Baltimore County, into hatred and contempt among the citizens of Baltimore County and State of Maryland, and to traduce, defame and vilify the said David Fowler, Judge as aforesaid, on the nineteenth day of August, in the year of our Lord eighteen hundred and eighty-six, at Baltimore County aforesaid, unlawfully, falsely, and maliciously did compose, print and publish, and cause and procure to be composed, printed and published, a certain false, scandalous, malicious, and defamatory libel, of and concerning the said David Fowler, Judge as afore- said, and of and concerning the administration of justice by the said David Fowler, Judge as aforesaid, in the Cir- cuit Court for Baltimore County, containing therein among other things certain false, scandalous, malicious and defamatory words and matter of and concerning the administration of justice by the said David Fowler, Judge as aforesaid, in the Circuit Court for Baltimore County, which said libel is as follows, that is to say : 'He (mean- ing thereby the Honorable David Fowler, Judge as afore- said,) has violated the State Constitution, and is disquali- fied, he is liable to impeachment and to indictment,' to the great scandal and disgrace of the administration of justice in Baltimore County, and in contempt of the State of Maryland and its laws, and to the evil example of all others in like case offending, and against the peace, gov- ernment and dignity of the State."

In support of the demurrer it is contended, by the traver- ser's counsel, that the *gravamen* of this indictment is, that by the alleged libelous publication, the administration of justice is brought into contempt.   Treating it as noth- ing but a libel upon judicial proceedings, the argument is, that the indictment does not set forth with sufficient particularity in what regard the administration of justice was held up to contempt ; that it does not set out the place

where justice was being administered, nor the case in which Judge Fowler was acting, nor the subject-matter of the suit, including the parties litigant. All these things, it is contended, should have been particularly stated in order to put the traverser upon notice of what he was called on to defend; and in order to learn that the language used may not be susceptible of another meaning than that ascribed to it. In especial support of the view that the prosecution is wholly for libelling judicial proceedings, reliance is placed on the conclusion of the indictment, which, in addition to the common law conclusion, also adds "to the great scandal and disgrace of the administration of justice in Baltimore County," and omits to charge that it was to the scandal of Judge Fowler, as is usual in the forms of such indictments. Without the conclusion, that it is to the great damage and scandal of Judge Fowler, it is contended it is not a good common law indictment for libelling him.

If this indictment was nothing more than what the traverser's counsel contends that it is, there would be much force in the exceptions to its sufficiency; but as we do not think the indictment is, or was intended to be, what the counsel contends, the objections are not so impressive. It distinctly charges Judge Fowler to be a Judge of the *Circuit Court for Baltimore County*, and alleges that the publication, charged to be libellous, was intended to "traduce, defame and vilify" *him as such Judge*. It holds *him up as such Judge* to contempt and scorn, by charging him to be guilty of something which would justify his impeachment and indictment. By this vilification of a Judge who administers justice in Baltimore County, it further alleges that scandal is thrown upon *the administration of justice through him*. The theory of this indictment is that the libel is against Judge Fowler in his official character and capacity; for the purpose of injuring him, in that official station, in the esteem of the

14                    v. 66.

public; and that thereby the *general administration* of justice *by him* has been scandalized. The official position of Judge Fowler is only alleged, and the scandal upon the administration of justice in consequence thereof is only inserted by way of aggravation of the offence. In 2 *Bishop's Criminal Law, sec.* 923, libels against official persons are said to be especially reprehensible. In 6 *Bacon's Abridgment, Title Libel,* 339, we find this statement of the law: "words, though not slanderous in themselves, yet if put in writing and published, and tending in any degree to the discredit of a man are libellous, when they defame a private person only; or persons in public capacity; in which latter case they are said to receive an aggravation as they tend to scandalize the government by reflections on those who are entrusted with the administration of public affairs."

Lord HALE, in his *Pleas of the Crown, page* 168, says: "an indictment is nothing more than a plain, brief narrative of an offence committed by any person, and the necessary circumstances that concur to ascertain its fact and nature." The offence here charged is libel, and the question is, are the "necessary circumstances" mentioned in this statement by Lord HALE found in this indictment, so that it is sufficient to warrant a judgment thereon.

All authorities agree that any written words are libellous which impute to a man fraud, dishonesty, immorality, vice, crime or dishonorable conduct, or that he be suspected of such conduct, or which suggest that he is suffering from any infectious disease, which has a tendency to injure him in his office, profession, calling or trade; or which holds him to contempt, hatred, scorn or ridicule. *Odgers on Libel and Slander,* 21; 3 *Chitty Crim. Law,* 295, *et seq.; White vs. Nicholls,* 3 *Howard U. S.,* 266; *and Negley vs. Farrow,* 60 *Md.,* 158. It cannot be doubted that enough circumstances must be stated in the indictment, by way of inducement, as are necessary to explain the meaning of

that which is charged; with such innuendoes as are necessary to show the import of the language charged to be scandalous and criminal. Innuendoes, however, are only necessary when the meaning is equivocal and may be mistaken. 3 *Chitty's Crim. Law*, 302. The same authority says that Lord ELLENBOROUGH censured the use of innuendoes as unnecessarily cumbering the record, where the language relied on is plainly intelligible in itself.

In section 619 of *Bishop's Directions and Forms*, it is said, that the precedents for libel so abound in what is certainly surplusage, that the Courts have not had occasion to pass on all the words, so as to enable one to say on authority what may be safely omitted, but that it may be accepted as a safe rule, in the language of a learned English Judge in a famous case of libel, "that whatever circumstances are *necessary to constitute the crime must* be set out; all beyond are surplusage." *Mr. Odgers* in his work on *Libel and Slander, page* 574, says "this exposition, of Lord Chief Justice DE GREY, in the case of *Rex vs. Horne,* is universally considered the best and most perfect exposition of the law on the subject." We refer to this case of *Rex vs. Horne, Cowper's Reports,* 683.

It is well settled, that it is not necessary to set out the whole paper in which the libellous matter is contained, but only such parts thereof as may be relied on as libellous, 3 *Chitty's Crim. Law,* 304; *Heard's Crim. Pleading,* 205, *et seq.;* and it is not necessary to be more specific than the publication itself. *Melton vs. The State,* 3 *Humph.,* 389. If the indictment sets forth on its face that which is of itself libellous, it is sufficient without circumstances, or innuendoes more than needful to connect it with the person libelled. *State vs. White,* 6 *Iredell,* 418.

Bringing this indictment to the test of these several principles it is abundantly clear, that it must be pronounced sufficient. Having charged that Judge Fowler is Judge and of what Circuit, and that with a view of

defaming and traducing him in his official capacity, and with a view to bring the administration of justice by him as Judge into contempt, as matter of inducement; and then having incorporated the exact words published of him, which are of the most defamatory character, there would seem to be no room for doubt that the allegations of the indictment are sufficient to put the party accused fully on his defence. If to charge a Judge of one of the Circuits of the State with violating the Constitution of the State, and with being "disqualified," and liable to indictment and impeachment, is not holding him up to shame, obloquy and contempt, by what language could it be done? They need no innuendoes to make them more expressive, and it is impossible to imagine any circumstances of explanation, which would relieve them of their opprobrious character. They can mean but one thing, and that is, that Judge Fowler has in some way disregarded constitutional requirements or inhibitions; and that he has done something so disgraceful, and dishonest, that he is liable to be indicted and convicted, and subject to impeachment and displacement from the bench. By necessary implication it charges him with unfitness for his position, and in language than which none could be more offensive, and than which none could be more certainly calculated to injure him in popular esteem, and more likely to bring all administration of justice through him into reproach and contempt. Any such publication in the light of the authorities, is under the heavy censure of the law. *Holt on the Law of Libel*, 170 173, and authorities heretofore cited. It goes far beyond the ordinary offence of intemperate comments on the conduct of Judge and jury in a particular case, which all the authorities say is punishable. In *Woodgate vs. Ridout*, 4 *Foster & Finlason*, 223, C. J. COCKBURN most justly says "it is of essential importance the administration of justice should be open to discussion; but that criticism must be

fair and honest, and not reckless and uncharitable; and that any thing beyond this, and which imputes corrupt motives to those who administer it, is an abuse of privilege is no longer open to discussion." When therefore the appellant undertook to write and publish of the Judge such things as this indictment charges, he is in effect holding up the Court, over which he presides, or in which he officiates, and *all* the proceedings before such Judge, to distrust.

In respect to the conclusion of the indictment, on which stress has been laid by the appellant's counsel, it may be said, that so far as the omission to allege in the conclusion, that what had been set forth as published, had redounded to the damage of Judge Fowler, is concerned, it is wholly immaterial ; and as to the allegation that it was " to the great scandal and disgrace of the administration of justice in Baltimore County, and in contempt of the State of Maryland and its laws, and to the evil example of all others in like case offending," we may add, that they are wholly unnecessary, and may be rejected as surplusage. Though part of these words are found in many forms they are not found in all; and though the allegation in conclusion that it is to the damage of the person libelled is to be found in most of the forms, the general form given in 3 *Chitty's Crim. Law,* 877, and in 2 *Archbold's Crim. Practice and Pleading,* 1038, do not contain it. The forms in *Bishop's Directions and Forms* contain it ; and the others also found in this indictment ; but on page 621 of that book they are included in brackets, and are said by a note to be "unnecessary." In section 157 of 1 *Bishop's Crim. Procedure,* these endings are all stated to be immaterial and may be safely omitted in all common law indictments. *Chitty* is quoted, and referred to as authority for that statement, than whom there is no better. In 2 *Hale's P. C.,* 188, it is laid down that the proper conclusion for all common law indictments is *"contra pacem domini regis."*

Richardson *vs.* State.

Nothing more, therefore, would seem necessary now and here, than "against the peace, government and dignity of the State." In civil suits the declaration concludes to the great damage of the plaintiff, because damages are sought. But in criminal prosecutions the State seeks to punish violations of law. This difference between the two proceedings is clearly stated by C. J. SHAW, in *Com. vs. Snelling*, 15 *Pick.*, 342. These allegations in conclusion, that is all beyond "against the peace, government and dignity of the State," being wholly immaterial on authority, may be rejected as surplusage. *Rex vs. Horne, Cowper's Reports,* 683; *Rawlings vs. State,* 2 *Md.,* 251. Immaterial matter of form may certainly be treated in the same way as non-essential matters of fact.

Finding the indictment sufficient, we turn to the ruling on evidence because of which this appeal was taken, and we find the Court ruled rightly. The evidence offered, was, avowedly, only to show that the defendant had been led into an honest mistake of fact, and thereby was misled as to the publication set out in the indictment. Nothing short of evidence tending to show the truth of the charge made can be admissible under our statute, allowing the *truth* to be given in evidence in justification under the *general issue.*

An evil intent is a conclusive inference and presumption of law from the publication of the libellous matter without excuse. 2 *Bishop's Cr. L.,* secs. 922-923; *Com. vs. Snelling,* 15 *Pickering,* 337; 2 *Lewis, C. C.,* 237, and *Negley vs. Farrow,* 60 *Md.,* 158. In Massachusetts there exists a statute respecting justification similar to ours, and in *Com. vs. Snelling,* already cited, evidence tending to show an honest mistake of fact was rejected, because it did not tend to prove the truth of the publication, and therefore did not tend to support the plea of not guilty.

*Judgment affirmed.*

(Decided 10th December, 1886.)