# JOHN J. ROBINSON *vs.* THE STATE OF MARYLAND.

## *Sufficiency of Indictment for Libel—Evidence in Defense.*

An indictment for libel charging that a letter published by the defendant in his newspaper was false and defamatory, when the entire letter is set forth in the indictment, is sufficiently definite and certain. It is not necessary that the indictment in such case should specify the particular matters alleged to be false and defamatory, since it alleges the whole letter to be such.

Upon the trial of an indictment for libel the presumption of law is that

the injurious publication is false and malicious, and the defendant can only show that the charges made in the libel were true, or rebut the presumption of malice by showing a justification.

Consequently, evidence is not admissible on behalf of the defendant to show that the person he libelled had spoken abusively of him at a public meeting, or that the defendant had afterwards disclaimed the existence of malice on his part.

*Decided November 13th, 1908.*

Appeal from the Circuit Court for Allegany County (HEN-DERSON and KEEDY, JJ.)

The article referred to in the opinion of the Court is as follows:

### Our Position Endorsed.

Vigorous letter from a close observer of Past and Present Local events.

Lonaconing, Md., Dec. 14th, 1907.

Editor Star. The thanks of the community are due for the severe but high-toned, well deserved chastisement you administered busy-body D. R. Sloan both in the Board of Trade meeting and this week's issue of the Star. In squirming and wiggling Duncan has been an artist in the past but now as upon several other notable occasions he stands before this community as a blundering, stuttering ninny. An increase of wages is always welcome—always desired; but what possible influence the Board of Trade could expect to wield in that direction is not clear to a reasonable mind. Their action in that regard now or at any other time could not be but an "empty bubble" in the air.

For some time past it has been noticed that Duncan has been catering to a certain prominent member of the miners' organization, and as the city election will soon be at hand, when Duncan will be a candidate to succeed himself as City Treasurer, probably he had in view a strategic move politically. If so, a boomerang for Duncan, like unto the one he enjoyed when he had his parade and played his fiddle in the streets of Lonaconing in honor of Sampson's victory at Manila, when it

developed next day that he should have paraded and fiddled for Schley, the real commander of that great Naval Triumph. Duncan wants to be progressive in any public movement where he can keep Duncan to the fore and see something material in the progressiveness for Duncan's interest.

High time he should go away back and sit down. He says he alone was responsible for the resolution, didn't consult any miners, had no apologies to make, and wouldn't take anything back. Of course not. It would be a condescension for Duncan to consult miners when his own empty, rickety head devised the resolution.

Apologize or take anything back. Never. Not Duncan. Never did, never will have sense enough to admit his universally recognized asininity. Calls you a snake in the grass, Mr. Editor. You don't look it. What about Duncan? Unless the science of Phrenology or physiogomy is falsely constructed I will wager a barrel of the best sweet potatoes, of which Duncan is fond, that you cannot produce a man in our vicinity who looks the part and plays it with more precision than Duncan R. Sloan.

What has he done in politics?

Since Davy Dick dethroned him from county political prestige, his avocation politically has been constantly that of a slimy, wriggling, biting, treacherous "snake in the grass." So in the Board of Trade or any other capacity in which he figures publicly, Duncan must be the whole show, Big Chief, and any who questions his right is ignorant, vile and unworthy.

He told you he could look every man in the face. Can he? Has he always been able to do so? Then to me he will have to deliver the proofs. No off-hand statement, but actual living evidences. "Pay dollar for dollar," he declared in ringing, but screeching, discordant tones. Does he? No one has said he didn't. That was not the subject under discussion. But any old thing will do for Duncan to say when he gets on his feet to talk, and talk he will when he cannot get an opportunty to play his famous Sampson fiddle. Duncan couldn't

always pay dollar for dollar. I remember the time when Duncan didn't have a dollar to pay anyone, and a more impoverished, haggard, idiotic specimen of forlorn looking young manhood never walked the streets of this historic village. Our miners sympathized with him and put him where he is today. Yet he impudently and defiantly confesses to have originated an agitation of great moment to the miners without consulting any of them. Shame upon such ingratitude—selfish and mercenary? Yes, these alone were his motives. He has already raised nearly every commodity in his store several times since the miners have had an increase of wages, and if an increase should come he would be the first to do it again. Has he increased his employee's wages? Has he advocated an increase of the wages of the employees of the silk mill, many of whom work for a mere simple pittance? He is quoted as saying at its opening that many of them in their eagerness to get employment were willing to work for anything. Remarkable that he did not so employ them. In some instances he came mighty close to it. What about the telephone girls that work for the company with which he is connected? The small wage they get for their arduous labors is positively unfair. Why don't he do something in these cases where he can wield some influence and leave our miners who are infinitely better qualified than he to look after their own business.

Times are brightening up and it is to be hoped that the discharged miners will soon get their employment. The companies should not hold our miners responsible for the action of a dolt.

The resolution probably had no part in the discharging of the men and certainly should not have had, but whether or no, it was a resolution of brazen stupidity and should be condemned by all right thinking men. The Board of Trade cannot disbar you for criticising their action. They have a right to be criticised for an unwise act, as well as they have a right to be commended for work well and profitably done. If they represent anybody in their official capacities it is the populace, and they should, by all means, be always publicly informed of the Board's proceedings.

Give us a fearless, unvarnished account of the proceeding-
of the Board of Trade, City Council, and other public functions
aries, and the people will sustain your action.

Yours for right,

Retired Miner.

The cause was argued before Boyd, C. J., Briscoe, Pearce,
Schmucker, Burke, Thomas, Worthington and Henry, JJ.

*Irvine R. Dickey* (with whom were *Ferdinand Williams* and
*Geo. A. Pearre* on the brief), for the appellant.

*Isaac Lobe Straus, Attorney General,* for the appellee.

Pearce, J., delivered the opinion of the Court.

The appellant was indicted in the Circuit Court of Alle-
gany County for publishing a criminal libel upon Duncan R.
Sloan, and being convicted and sentenced to pay a fine of one
hundred dollars and costs, and to confinement in the county
jail for a period of fifteen days, he has appealed from that judg-
ment.

The alleged libel is contained in an article or letter purport-
ing to be written by a Retired Miner, and published in the
Lonaconing Star, a newspaper owned, edited, and published
in Allegany County, by the appellant.

In this article or letter, Mr. Sloan is characterised as "a
blundering, stuttering ninny"—as having an "empty, rickety
head"—as "not having sense enough to admit his universally
recognized assininity"—as "playing the part of a snake in the
grass"—and it declares that "his avocation politically has been
constantly that of a slimy, wriggling, biting, treacherous snake
in the grass," with numerous other epithets of like character.
The indictment contains but one count, and that sets out the
article in full which will be reproduced in full in the report of
the case.

The traverser demurred to the indictment and the Court
overruled the demurrer. The traverser then, without with-
drawing his demurrer, pleaded over, with leave of the Court, and
plead not guilty.

The sole ground of demurrer is that instead of pointing out and specifying some particular alleged false and defamatory matters, the entire article is set out as "a false, scandalous, malicious and defamatory libel," and the indictment then charges that the traverser well knew the same to be false. The traverser contends that if a whole letter or article may be charged as libellous, "he must defend against it in its entirety though it may have reference to many conditions, may contain many statements, and may be full of various subjects," but he was not able to produce any authority to sustain his demurrer other than a single Texas case, viz—*Jackson* v. *State*, 77 S. W. Rep. 223, which we are not able to accept as controlling.

The practice appears to be strongly against this contention. In 13 *Enc. Pl. and Pr.* p 47, it is said: "It is not *necessary*, in a complaint for libel, to set out the whole of the obnoxious publication in which the libel appears. It will be *sufficient* to set forth such parts of the libel as the plaintiff relies on," and this text is supported by decisions from numerous Courts. The author of this article in the *Enc. Pl. & Pr.* adds, "it would seem that if any omitted parts explain those set out, the defendant may give them under the general issue."

The same is stated to be the law in 25 *Cyc.* 448. It was so held in *Com.* v. *Harmon*, 2 Gray, 289, citing 3 *Chitty's Crim. Law*, 375. In *American Book Co.* v. *Kingdom Pub. Co.*, 71 Minn. 363, the entire article was set out, and on motion to make the complaint more definite, the Court said, "While in actions for libel it may not be *necessary* to set forth an entire article, it is absolutely necessary to set forth in precise words such passages as are claimed to be actionable," and the motion was refused.

In *State* v. *Dowd*, 39 Kansas, 412, the whole article was set out in the information. There was a motion to quash on the ground that the charge was too indefinite and uncertain, but the motion was refused. In *State* v. *Smith*, 7 Lea (Tenn.) 249, the whole letter was set out in the indictment, which was held good on motion in arrest of judgment. The Court said "The entire publication is set out, and thus the principle and

letter of the rule which requires the libelous matter to be set forth verbatim is complied with."

In *Evening Post Co.* v. *Richardson*, 113 Ky. 641, the entire article was held to be admissible in evidence though parts were not libelous. In *McClure* v. *Review Pub. Co.*, 38 Wash. 160, there was a demurrer to the complaint, and also a motion by defendant to make the complaint more definite and certain by incorporating a copy of the entire publication. This motion was granted and the ruling was excepted to. On appeal the Court said. "An alleged libelous newspaper article, like every other instrument of writing, must be construed in connection with, and with reference to the entire article, and no intelligent construction can be obtained by a perusal of excerpts or disconnected extracts from the publication," and the ruling was affirmed. This case illustrates an extreme view, going to the extent of holding that the complaint or indictment is *necessarily* indefinite and uncertain unless the whole article is set out, and we are not to be understood as adopting that view. But if that view were adopted we should be compelled to sustain the indictment in this case.

In *Singer* v. *N. Y. Times Co.*, 74 N. Y. App. Div. 380, the complaint set out a lengthy article in full, and averred that the matter so printed and published was false, libelous and defamatory, and was maliciously and wantonly published. The defendant asked for a bill of particulars, and filed an affidavit that some of the statements of the article were true, and that it believed none were untrue; that it had a defense on the merits and was able to justify in part, and that in order to prepare and present its defense it was necessary that the plaintiff should designate what parts were libelous, and in what respect false.

It was held that a bill of particulars was not necessary to enable defendant to answer; that as the complaint set out the article in full and averred that the whole was false and defamatory, it was sufficiently definite and certain. The Court said, "We know of no rule which requires a plaintiff to inform a defendant in an action for libel, to what portion he may plead justification, and that is what the order in the present

case would accomplish.   Nor is there any need that the plaintiff make his complaint more definite and certain, as it is already fully complete in such particulars.   It sets up the whole article claimed to be libelous and avers that the whole is false and defamatory.   Words could not make it more definite."

It will be observed that the indictment in the present case charges the publication of "a false, scandalous, malicious and defamatory libel in a certain newspaper called the Lonaconing Star and the Lonaconing Review in Allegany County," * * * "according to the tenor and effect following, &c," thus characterising the whole article as scandalous and defamatory.   Wanton and reckless malice breathes in every line of this letter, and it would be difficult to segregate a single passage which was not intended and caculated to make Sloan odious and contemptible in the eyes of the public, and to injure his reputation for honesty and truth.   We are not required to say, and do not say, that under all circumstances an entire book or work of magnitude dealing with legitimate subjects of general interest, could be charged as libelous without any specifications whatever.   That question will be dealt with when it arises; but we cannot hesitate to hold that the demurrer in this case was properly overruled.

Three exceptions were taken in the course of the trial.   In the first the traverser offered to testify that at a public meeting in Lonaconing on December 5th, 1907, Duncan R. Sloan used violent and abusive language about him, calling him a snake in the grass and using other opprobrious terms; that some person then present wrote in his defense the article alleged to be libelous, and that the same was inadvertently published on December 26th, 1907, in his paper.   To this offer the State objected, and the Court excluded that part of the offered evidence which related to what was said by Sloan at the public meeting and the offer to connect the same with the publication, but admitted the rest of the proffered evidence.

In the second exception the traverser was asked to state the opprobrious language used by Sloan about him, and upon the objection of the State, the objection was sustained and this evidence was excluded.

In the third exception the traverser offered in evidence a copy of his paper of January 2nd, 1908, containing a letter of Duncan R. Sloan to the Evening Times of Cumberland in which he stated that he intended to present to the Grand Jury of Allegany County the matter of the publication referring to him, in the Star of December 26th, 1907, and also the traversers statement in the issue of his paper of January 2nd that he had no comment to make other than to say that if an indictment was found it would be defended with vigor, and that the public knew there was no malice in the publication of which Sloan complained.

We have been referred to no authority in support of these exceptions, and we discover no error in the rulings upon them. The law, as settled by our decisions, is that nothing short of evidence tending to show the truth of the charge is admissible. *Richardson* v. *State*, 66 Md. 205, *Lewis* v. *Daily News Co.*, 81 Md. 473. In that case it was said "every publication injurious to the character is, in law, false and malicious, until the presumption of falsehood is met by plea of the truth, or the presumption of malice is removed by showing a justifiable occasion or motive." And in *Coffin* v. *Brown*, 94 Md. 193, the Court quoted the following from 18 *Enc. of Law*, 2 ed., 169, "that to constitute a justification, the precise charge must be justified, and it will not be sufficient to offer truth of another charge, though of the same general nature, and though distinct only as to the subject matter or the time and place." This principle embraces the setting up of a counter charge previously made provoking the alleged libel. Nothing but the truth will avail.

> *Judgment affirmed with costs above and below.*