The **WASHINGTON FREE COMMUNI-TY**, Joseph Brinton Dillingham, John C. Dillingham, Ian E. McNett, and Michael Tabor, Plaintiffs,

v.

The **STATE'S ATTORNEY OF MONT-GOMERY COUNTY, MARYLAND**, Superintendent of Police of Montgomery County, Maryland, Defendants.

Civ. No. 20811.

United States District Court
D. Maryland.

May 28, 1969.

Joseph Forer, Washington, D. C., for plaintiffs.

Alfred J. O'Ferrall, III, and Robert A. DiCicco, Asst. Attys. Gen., Baltimore, Md., for defendant, The State's Attorney of Montgomery County, Md.

David L. Cahoon, Rockville, Md., County Atty. for Montgomery County, Md., for defendant, Superintendent of Police of Montgomery County, Md.

Before THOMSEN, Chief Judge, and NORTHROP, District Judge.

PER CURIAM:

In their complaint, filed May 27, 1969, plaintiffs seek (1) a declaratory judgment that page 9 of the March 15–31, 1969 issue of the Washington Free Press and particularly a cartoon appearing thereon, and reprints thereof, are protected by the First Amendment and may not constitutionally be treated as obscene matter under Article 27, Section 418 of the Maryland Code;[1] (2) a temporary restraining order, a preliminary injunction and a permanent injunction, enjoining defendants from interfering with the publication, circulation and distribution of said page 9, the cartoon and reprints thereof (which plaintiffs plan to distribute at a rally on Memorial Day, May 30) from confiscating the same and from arresting or prosecuting plaintiffs or any other persons for publishing, circulating, distributing and possessing the same; and (3) other and further relief.

Defendants, the State's Attorney and the Superintendent of Police of Montgomery County, Maryland, have moved to dismiss the complaint for a number of reasons. At the hearing on the afternoon of May 27 the parties submitted the application for a T.R.O. and the motion for a preliminary injunction to the Court on the pleadings, two affidavits filed by plaintiffs and a number of statements of fact made by counsel for the respective parties and not disputed by opposing counsel. The Court has some familiari-

---

1. All statutory references herein, unless otherwise indicated, are to the Annotated Code of Maryland, 1957 ed., and cumulative supplements.

ty with the matter, since the judges who heard this case are the district judges in a statutory three-judge court which has been designated to hear a related case brought by the Washington Free Community seeking to enjoin the enforcement of various sections of Article 85A, dealing with subversive activities, and the prosecution of any indictments which may be returned as a result of a charge to the Grand Jury of Montgomery County on March 3, 1969, by Judge James H. Pugh, of the Circuit Court for that County.[2]

The plaintiffs in the present action are the Washington Free Community, said to be a non-profit corporation of the District of Columbia, which publishes an "underground" newspaper, the Washington Free Press, which circulates in the Washington metropolitan area, including Montgomery County, and four individuals, who have sold or distributed or would like to distribute copies of the newspaper or of the cartoon in question.

The cartoon, captioned "HE' COMM D' JUDGE", shows a naked man, admittedly intended to represent Judge Pugh, masturbating before a box on which various tools, perhaps intended to represent torture instruments, are hung. Plaintiffs contend that the dominant theme of the cartoon, by itself and in context, "conveys the idea that the particular judge depicted, and by extension various other judges, as well, obtains sexual gratification out of the exercise of judicial power".

On or about March 21, the defendant State's Attorney instructed the police department of the County that he considered the cartoon to be obscene matter within the meaning of Article 27, Section 418.[3] Shortly thereafter police officers entered the premises of a distributor of the paper, and informed him that the March 15–31 issue contained obscene matter, namely, the cartoon. Thereupon the distributor "surrendered" to the police officers about 75 copies of that issue, which the distributor had on consignment.

On the same day plaintiff Joseph Brinton Dillingham deliberately sold to a policeman a copy of the paper containing the cartoon. He was arrested, charged with violating Article 27, Section 418. On April 7 he was tried in the People's Court of Montgomery County, convicted of having in his possession with intent to distribute obscene matter (the cartoon), sentenced to six months imprisonment, and released on bail pending appeal to the Circuit Court for Montgomery County, where his case will be tried de novo, with the right to a jury trial, on June 9.

On April 6, one William Price was arrested, charged with the possession of obscene matter (the cartoon) intending to exhibit it. His case has not yet been tried.

No other arrest has been made, and no seizure (or surrender) of any copies of the newspaper has been made, although the front page of the April 16–30 issue consisted almost entirely of an enlarged version of the cartoon, with some of the lines omitted and replaced by numbered dots, to be connected by drawing lines between them, thus reproducing the original cartoon. The caption was the same, and the four lines of text stated that the "name of the game" is "Subversion— Perversion".

Plaintiffs allege that they desire to circulate the cartoon, reprinted by itself or as part of page 9 or of the entire March 15–31 issue. An affidavit by plaintiff Joseph Brinton Dillingham

---

2. No such indictment has yet been returned.

3. Article 27, Section 418, as amended in 1967, provides:
   "Sending or bringing into State for sale or distribution; publishing, etc., within State.
   "Every person who knowingly sends or causes to be sent, or brings or causes to be brought, into this State for sale or distribution, or in this State prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor."

states that he desires to exhibit the cartoon at a meeting on May 30, and that "I believe, and obviously have reason to believe, that if I do so, the defendants, unless restrained by this Court, will again arrest and prosecute me on a charge of violating the Maryland obscenity statute." The other affidavit asserts: "It is obvious that unless they are restrained the defendants will, under color of the Maryland obscenity law, arrest and prosecute the persons who offer to sell that issue in Montgomery County". It is not alleged that any threats to make such arrests or to seize any copies of the cartoon or paper have been made. Counsel for defendants assert, without contradiction, that they have not made nor authorized any such threats.

Defendants are aware of the law dealing with the seizure of material believed by the authorities to be obscene, which was recently reviewed in Section I of the opinion of the Fourth Circuit in Tyrone, Inc. v. Wilkinson, 4 Cir., 410 F.2d 639 (May 6, 1969). Article 27, Section 418A, provides for a procedure including an adversary hearing before an injunction and seizure. That or some other procedure may be used. There is no reason to believe that defendants will make or authorize any illegal seizure.

It is, of course, possible, that on May 30 or thereafter defendants may cause the arrest of someone for violating Article 27, Section 418, set out in note 3, above, or for publishing a criminal libel (a common law offense in Maryland [4]), or that a grand jury may indict someone for one or the other of those offenses or for criminal contempt, in view of the pendency of the trials referred to above.

Section II of the opinion in Tyrone, Inc. v. Wilkinson, supra, discussed the possible injunction of state court prosecutions. The Fourth Circuit found it unnecessary to pursue the contention that 42 U.S.C. § 1983 creates a statutory exception to 28 U.S.C. § 2283 for the enforcement of First Amendment rights,

since the Fourth Circuit found that the application for the injunction lacked equity.[5] The Court stated:

"Comity dictates denial of federal injunctive relief against state prosecutions that challenge First Amendment rights when it does not appear that the accused have 'been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford [the accused] any protection which they could not secure by prompt trial and appeal pursued to this Court.' Douglas v. City of Jeannette, 319 U.S. 157, 164, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); cf. Broyhill v. Morris, 408 F.2d 820 (4th Cir. 1969). On the other hand, suppression of First Amendment rights by bad faith enforcement of a statute unconstitutional on its face or as applied justifies immediate prohibition. Then the chilling effect on the full exercise of First Amendment freedoms results from the prosecution itself. Abatement need not await vindication in the criminal court. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); cf. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). * * *" 410 F.2d 639, at 642.

There are several reasons why request for an injunction in the instant case lacks equity.

Plaintiffs have not shown that defendants have engaged in or intend to engage in any bad faith enforcement of the Maryland statute. The original arrest is supported by the finding of guilt by the judge of the People's Court. That case will be tried de novo on appeal, in accordance with the Maryland practice. The defendant in that case, and any other plaintiff herein or anyone else who may be prosecuted in the future will be accorded "the procedural safeguards of the criminal process". See Bantam

4. Richardson v. State, 66 Md. 205, 7 A. 43 (1886).

5. The pertinent cases were cited in note 7 to the Court's opinion. 410 F.2d at 642.

Books, Inc. v. Sullivan, 372 U.S. 58, at 70, 83 S.Ct. 631, at 639, 9 L.Ed.2d 584 (1963). This factor was also regarded as important in the *Tyrone* case.

It is not necessary for this Court to decide at this time whether the cartoon, by itself or in context, is obscene within the meaning of the recent Supreme Court cases.[6] Outdoor American Corp. v. City of Philadelphia, 333 F.2d 963, 965 (3 Cir. 1964). The Supreme Court "has recognized that federal interference with a State's good-faith administration of its criminal laws is peculiarly inconsistent with our federal framework. It is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings". Dombrowski v. Pfister, 380 U.S. 479, 484, 485, 85 S.Ct. 1116, 1119, 14 L.Ed.2d 22 (1965).

In this case there is no attack on the facial constitutionality of Article 27, Section 418. This renders inapplicable the following quotation from Zwickler v. Koota, 389 U.S. 241 at 254, 88 S.Ct. 391 at 399, 19 L.Ed.2d 444: "[A] request for a declaratory judgment that a state statute is overbroad on its face must be considered independently of any request for injunctive relief against the enforcement of that statute. We hold that a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." Such an attack would require a statutory three-judge court.

Danger of irreparable injury both "clear and imminent" has not been shown by any of the plaintiffs. Outdoor American Corp. v. City of Philadelphia,

supra, perhaps the closest case on the facts to this case.

The failure of plaintiffs to establish any bad faith, any threats of future arrests or seizures, or any inability to rely on any proper defenses in the state courts, shows that the application for the injunction requested herein lacks equity.

Plaintiffs' application for a temporary restraining order and their motion for a preliminary injunction are hereby denied.

Defendants' motion to dismiss is likewise denied. The complaint contains allegations which, if considered most favorably to the pleader, might warrant some relief.

---

6. A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); Redrup v. State of New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967).