**GROVE PRESS, INC., a Corporation, et al., Plaintiffs,**

v.

**Guy W. CALISSI et al., Defendants.**

**Civ. A. No. 900–61.**

United States District Court
D. New Jersey.
Aug. 1, 1962.

Jerome C. Eisenberg, Newark, N. J., for plaintiffs.

George B. Gelman, Hackensack, N. J., for Guy W. Calissi, Robert A. Doremus, Gordon Graber, John J. McEvoy and Philip Wagenti.

James M. Muth, Ramsey, N. J. and Henry G. Morgan, Newark, N. J., for Robert A. Doremus.

Stickel & Stickel, Newark, N. J., for Frank J. Stoeckle.

Vincent P. Torppey, Newark, N. J., for August J. Rauscher.

Freeman & Kroner, Westwood, N. J., for John C. Lindeman.

Schneider, Lustbader & Morgan, Newark, N. J., for Robert A. Doremus.

Before McLAUGHLIN, Circuit Judge, MADDEN, Chief Judge, and WORTENDYKE, District Judge.

McLAUGHLIN, Circuit Judge.

This is a suit to enjoin certain New Jersey law enforcement authorities from proceeding under the law of that State against a book titled "Tropic of Cancer". The principal plaintiff is the book's publisher who advertises its book on the cover page of same as " * * * an unbridled obscenity which it is". We do not reach the question of whether that deliberate statement is true because, as will appear, in its present status the controversy is clearly an issue for the State of New Jersey to resolve.

The basic facts are simple. Since at least 1868, New Jersey has had laws declaring "the distribution of obscene material to be criminal conduct and punishable as such." State v. Hudson County News Co., 35 N.J. 284, 286, 173 A.2d 20, 21 (1961). The present one (N.J.S. 2A:115–2) reads:

"Any person who, without just cause, utters or exposes to the view of another, or possesses with intent to utter or expose to the view of another, or to sell, any obscene or indecent book, pamphlet, picture or other representation, however made, or who in any way advertises the same, or in any manner, whether by recommendation against its use or otherwise, gives any information how or where any of the same may be had, seen, bought or sold, is guilty of a misdemeanor."

With a strong unanimous opinion by Justice Jacobs, the State Supreme Court in the Hudson News decision upheld the constitutionality of that statute and construed it, p. 294, 173 A.2d p. 25, " * * * as though it expressly embodied the word 'knowingly' ". Holding that the "without just cause" phrase "modifies all of the later prohibitory provisions including those embodied in the 1957 and 1959 amendments", the court rejected the contention that the clause " * * * is too vague on its face and therefore violative of due process requirements."

The book involved was published in this country in June 1961. In October 1961 Guy W. Calissi, Prosecutor of Bergen County, New Jersey, read it and in his opinion found it to be obscene and indecent. Following that the Prosecutor became acquainted with the decision of Besig v. United States, 208 F.2d 142 (9 Cir. 1953) which held the book obscene under the federal statute prohibiting the importation of obscene literature into the United States, 19 U.S.C.A. § 1305(a). He also knew the Upham v. Dill opinion, 195 F.Supp. 5, 10 (S.D.N.Y.1961) where the court held that the question of whether this book was obscene was one of fact "not resolvable on a motion for summary judgment."

Shortly thereafter Mr. Calissi directed police chiefs of various municipalities in Bergen County to ascertain whether the book was being offered for sale and, if it was, to arrest the sellers and seize the books as evidence. The chiefs did so investigate and found instances where the book was being offered for sale. The sellers were arrested and the books seized. All of the proceedings were un-

582

der the above quoted N.J.S. 2A:115-2. Included in these was the seizure of copies of the book from plaintiff Benjamin Schiller and the latter's arrest. On that occasion the police obtained a search warrant contemporaneously with filing a complaint against Schiller under said N.J.S. 2A:115-2.

The first count of the amended complaint is directed to those seizures with the exception of Schiller's. They are alleged to be against the First and Fourth Amendments to the United States Constitution.

The second count goes on the theory that the proceeding against Schiller was under N.J.S. 2A:152-5 and not under N.J.S. 2A:115-2. There is not only no support for this in plaintiff's voluminous affidavits, but it is directly contrary to the steps which were taken by the Paramus chief of police in this seizure and arrest.

The third count alleges the arrest of the sellers and includes plaintiff Irvin Jones, a mechanic of a book vending corporation, as one of those arrested. The allegation is that the arrests were contrary to the First and Fourteenth Amendments.

The fourth count alleges a conspiracy between the Bergen County law enforcement people concerned to deprive plaintiffs of their rights, privileges and immunities under the United States Constitution.

The fifth and sixth counts are against Essex County, New Jersey, law enforcement personnel for moving in two instances under N.J.S. 2A:115-2, against booksellers by seizing copies of the book.

The seventh count assails the state obscenity statute, N.J.S. 2A:115-2, as unconstitutional claiming that it is "so vague as to deprive plaintiffs of their property and liberty without due process of law" and that it "makes acts of plaintiffs criminal without any requirement of criminal intent."

The eighth count asserts that the book "is not obscene". It asks for such affirmative declaration by this court.

The complaint admits that the seizures and the arrests "were made possible only because said defendants were and are clothed with the authority of State law and said acts were taken and performed under color of the statutes, ordinances, regulations, customs, or usages of the State of New Jersey, the County of Bergen, and, as the case may be, the Boroughs of Cliffside Park, Fort Lee, Lodi, and Paramus, and the Township of River Vale * * * the County of Essex, and the City of Newark, * * * Township of Millburn." In the conspiracy count it is also admitted that the defendants acted under state law.

The allegations of the seventh count— that the state law (N.J.S. 2A:115-2) is unconstitutional because it is so vague as to deprive plaintiffs of their property and liberty without due process of law and makes acts of plaintiffs criminal without requirement of criminal intent—were specifically passed upon by the New Jersey Supreme Court in State v. Hudson County News, supra. The court there held that the statute does require proof of knowledge on the part of the defendant. It reaffirmed, 35 N.J. p. 287, 173 A.2d p. 22, "that the statutory terminology [of obscenity] in its present form is sufficient to withstand constitutional attack", citing a great number of New Jersey decisions. It noted, p. 288, 173 A.2d p. 22, that Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed. 2d 1498 (1957) had upheld both the Federal and California obscenity statutes (both of them much the same as that of New Jersey) as " * * * not, on their face, violative of the freedom of expression guarantees and definiteness requirements of the United States Constitution." In Manuel Enterprises v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962), the latest reported appearance of the Federal obscenity statute before that Court, that statute was accepted by the Court without comment.

The full situation, very briefly outlined above, was before Judge

Wortendyke on plaintiffs' application for a temporary restraint. The judge at that time stated:

"* * * I find no evidence in the affidavits before me, or in the nature of the proceedings as disclosed in the oral arguments, that the civil rights of these plaintiffs have been infringed under color of the statutes of New Jersey * * *. Any other criminal offender under any other statutory offense in New Jersey would be subject to the criminal procedure prescribed by the New Jersey law and could not expect to complain to this Court and seek from this Court intervention in the regular handling of the enforcement of the State's criminal laws."

From all of the above, what happened was that the county and municipal law enforcement agencies of Bergen and Essex Counties, proceeding properly under the present New Jersey obscenity statute (the successor to similar legislation of that state that dates back almost a hundred years), arrested several booksellers who offered for sale copies of the book "Tropic of Cancer" and seized copies of the book. The foundation of those actions was the reading of the book by the Prosecutor of Bergen County and his opinion therefrom that the book is obscene. The circumstance that after that he learned of the Besig decision is of no particular importance.

If the state prosecution against the book and its sellers was or is arbitrary, S. & R. Amusement Corp. v. Quinn, 136 N.J.Eq. 420, 421, 38 A.2d 571 (1944), or unlawful or in excess of the authority of the municipal representatives, Higgins v. Krogman, 140 N.J.Eq. 518, 55 A.2d 175 (1947), or is illegally interfering with legitimate business by peace officers, under the guise of enforcing the law, the power of the New Jersey courts to restrain it is indisputable. Bantam Books, Inc. v. Melko, 25 N.J.Super. 292, 299, 96 A.2d 47 (Ch.Div.1953), modified, 14 N.J. 524, 103 A.2d 256 (1954), quoting Higgins v. Krogman, supra, with approval. The other side of the medal is of course that "The court of chancery has no power to enjoin police officers from enforcing the criminal law of the state or from making an arrest or taking other lawful action under the sanction of a criminal statute." Dell Publishing Co. v. Beggans, 110 N.J.Eq. 72, 74, 158 A. 765, 766 (1932).

Complete reliance is placed by plaintiffs on the proposition that defendants, though they performed their duty under the New Jersey law and in accordance with it, nevertheless violated plaintiffs' civil rights because the law itself is unconstitutional. Of the two reasons advanced for this charge, the suggestion, in the face of the state Supreme Court holding to the contrary, that N.J.S. 2A:115-2 does not include "intent" is frivolous and the other, that it is too vague, is just about in the same category.

In the circumstances we are squarely faced with the question of whether we should abstain from passing upon the merits of this litigation, leaving that decision to the New Jersey courts. The opinion of Mr. Chief Justice Stone for the Supreme Court in Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), is controlling on this problem. The pertinent law as there laid down cannot be misinterpreted. The Court said at pp. 163–164, 63 S.Ct. at pp. 880–881:

"It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guaranties, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction. Davis & Farnum Mfg. Co. v. Los Angeles, 189 U.S. 207 [23 S.Ct. 498, 47 L.Ed. 778]; Fenner v. Boykin, 271 U.S. 240 [46 S.Ct. 492, 70 L.Ed. 927]. Where the

584

threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury 'both great and immediate.' Spielman Motor Co. v. Dodge, 295 U.S. 89, 95 [55 S.Ct. 678, 79 L.Ed. 1322], and cases cited; Beal v. Missouri Pacific R. Corp., 312 U.S. 45, 49 [61 S.Ct. 418, 85 L.Ed. 577], and cases cited; Watson v. Buck, 313 U.S. 387 [61 S.Ct. 962, 85 L.Ed. 1416]; Williams v. Miller, 317 U.S. 599 [63 S.Ct. 258, 87 L.Ed. 489].

\*   \*   \*   \*   \*

"Nor is it enough to justify the exercise of the equity jurisdiction in the circumstances of this case that there are numerous members of a class threatened with prosecution for violation of the ordinance."

Cf. Fass v. Roos, 184 F.Supp. 353 (D.C.N.J.1960) and cases there cited. See also Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1925); Cline v. Frink Dairy Company, 274 U.S. 445, 452, 47 S.Ct. 681, 71 L.Ed. 1146 (1926).

There has been no showing to us of a danger of irreparable injury "both great and immediate". There has been no showing to us that the courts of New Jersey will deal with the ordinary question of its type which is raised here in any way other than fairly, wisely and expeditiously. It is urged as a reason for this court to dispose of the fundamental issue that the State court is holding its hand pending the determination of this court. The New Jersey state courts are, as always, most considerate and courteous. Our determination is that this case is one for decision on the merits by the State courts. As Chief Justice Stone said in Jeannette, 319 U.S. p. 164, 63 S.Ct. p. 881:

"It does not appear from the record that petitioners have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford petitioners any protection which they could not secure by prompt trial and appeal pursued to this Court."

The amended bill of complaint will be dismissed.