333 F.2d 963
 OUTDOOR AMERICAN CORPORATION, G. & L. Distributors and
George A. Rosenbloom, Appellants,
v.
CITY OF PHILADELPHIA, Howard R. Leary, James C. Crumlish,
Jr., the EveningBulletin, Triangle Publications,
Inc., and Columbia Broadcasting System, Inc.
 No. 14697.
 United States Court of Appeals Third Circuit.
 Argued March 6, 1964.
Decided June 30, 1964, Rehearing Denied July 21, 1964,
Certiorari Denied Nov.9, 1964, See 85 S.Ct. 192.
 
 Benjamin Paul, Philadelphia, Pa., for appellants.
 Matthew W. Bullock, Jr., Deputy City Sol., Philadelphia, Pa. (James L. Stern, Second Deputy City Sol., Edward G. Bauer, Jr., City Sol., Philadelphia, Pa., on the brief), for appellees.
 Before McLAUGHLIN and FORMAN, Circuit Judges, and LEAHY, District judge.
 LEAHY, District Judge.
 Plaintiffs are publishers and distributors of nudist magazines and paperback books. In October, 1963, defendants confiscated a large quantity of plaintiffs' publications and arrested and are prosecuting plaintiff Rosenbloom in the Pennsylvania criminal court for violation of the Pennsylvania statute which makes dealing in obscene publications a felony.[1] Suit was brought by plaintiffs in the United States District Court for the Eastern District of Pennsylvania for a declaratory judgment and injunctive relief under the Civil Rights Act.[2] Upon defendants' motion, the district court dismissed the complaint on the grounds there was no showing of irreparable injury, clear and imminent, so as to justify interference in state proceedings and the City of Philadelphia is not a proper party under the Civil Rights Act. Though the entire complaint was dismissed, plaintiffs appeal only from dismissal of their cause against City of Philadelphia, Police Commissioner Howard R. Leary, and District Attorney James C. Crumlish, Jr.
 Plaintiffs allege defendants are depriving them of their constitutional rights, privileges and immunities under color of the Pennsylvania Statute. Also, the arrests and deprivation is part of a deliberate campaign by defendants to prevent wholesale or retail sale or display of plaintiffs' publications which they, acting as censors, have determined are obscene. Further, plaintiffs allege defendants have adopted a criterion that nudity is obscenity; valuable property has been taken without due process of law; freedom of speech and freedom of expression have been denied them; the arrests are illegal; and the actions of defendants are without any basis in law.
 Relief sought includes a declaration none of the publications in question constitutes hard-core pornography, or is obscene, or is subject to governmental suppression in accordance with the definition of obscenity stated in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); a preliminary injunction (thereafter to be made permanent) against continuation of prior practices, procedures and conduct of defendants; restraining defendants from threatening plaintiffs or their customers with arrest, search, seizure or prosecution of their publications; directing defendants to return seized publications; and declaring defendants' actions violative of plaintiffs' constitutional rights of property, freedom of speech, and freedom of press.
 Decisive of this appeal is the question whether the district court in the exercise of its discretion was correct in refusing to use its equitable power. Plaintiffs concede federal courts will not interfere with a state's criminal prosecution. However, they contend a reading of their complaint demonstrates only one prayer for relief among several concerned suppression of evidence. Thus, plaintiffs argue, the fact they may not be entitled to all relief sought does not warrant dismissal of the entire action. We disagree with plaintiffs' basic contention only one request requires interference with state proceedings. All, at least by indirection, do.
 Plaintiffs' prayer for a declaration the publications in question are not obscene is a circuitous way of requesting the district court 'to interfere with or embarrass' state proceedings. Whether the court should abstain from passing upon the merits of this litigation, leaving that decision to the state courts, is the crucial question raised by the request for a declaratory judgment. No reason for the district court to involve itself with the basic question of obscenity at this time exists. The decision of the state courts may result in plaintiffs' obtaining the objectives they now seek. If not, petition to the Supreme Court of the United States for writ of certiorari remains. As Mr. Chief Justice Stone for the Supreme Court in Douglas v. City of Jeannette, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943) stated:
 
 
 1
 'Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. Hence, courts of equity in the exercise of their discretionary powers should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent; and equitable remedies infringing this independence of the states-- though they might otherwise be given-- should be withheld if sought on slight or inconsequential grounds.'
 
 
 2
 Danger of irreparable injury both 'clear and imminent' has not been shown. Since there are three plaintiffs in the matter before the federal court and only one involved in state proceedings, it is argued a finding of not guilty in the state courts of one of plaintiffs is no protection to the others. The fact only one plaintiff is being prosecuted in the state courts is without independent legal significance, since publications involved are the same as to each plaintiff. All issues plaintiffs are raising in the federal court may be brought before the state courts, and there is no reason to believe state officials will enforce the Pennsylvania statute against plaintiffs not involved in state proceedings if the publications are found not obscene in the pending criminal prosecution. If held obscene, plaintiffs not involved in state proceedings cannot complain of enforcement of the statutes. Nor should a federal court of equity ambush the state courts by deciding the fundamental basis of obscenity.
 
 
 3
 Paragraph (c) under the prayer for relief, which requests return of seized publications, makes no mention of time. Therefore, plaintiffs argue, if time for their return was fixed by the court as after state proceedings, there could be no interference with the State. But there is no suggestion, and we cannot assume the materials will not be returned to the proper people if found not obscene. If held obscene, plaintiffs cannot complain of confiscation.
 
 
 4
 So far as the preliminary injunction is concerned, plaintiffs contend it is directed at future unconstitutional acts and is supported by Refoule v. Ellis, D.C.Ga., 74 F.Supp. 336, 343, wherein the following is stated:
 
 
 5
 'This does not violate the general principle that equity does not ordinarily interfere with the administration of criminal laws. Plaintiff seeks to enjoin not the administration of criminal laws by the State of Georgia, but the illegal manner of administration by defendants as agencies of the State.'
 
 
 6
 As in Refoule, plaintiffs argue they seek to enjoin not state proceedings, but unlawful harassment by local officials. Harassment will continue regardless of outcome of pending criminal proceedings, according to plaintiffs, unless injunctive relief is granted.
 
 
 7
 As a result of unlawful arrest, detention and interrogation by the Georgia police, plaintiff in Refoule sought an injunction and damages. In an apparent attempt to establish a case of sodomy against plaintiff, the police on four occasions arrested him, held him incommunicado, and subjected him to questioning for long hours under unusual circumstances and in unusual places. Defendants 'failed to express any intention to cease the commission of such acts in the future, but on the other hand, have strongly insisted that they were within their rights in doing what they have done and in continuing to do so in the future if they find it desirable to do so.' Thus, Georgia police not only committed flagrant violations of plaintiff's civil rights, but in addition threatened to continue to do so. No such situation exists here. No doubt defendants intend to enforce the Pennsylvania statute against plaintiffs' publications until final adjudication of their obscenity. However, plaintiffs are not warranted in assuming state officials would misuse their power or refuse to acquiesce in a decision of the state courts favorable to plaintiffs. Continued criminal prosecution regardless of outcome of pending state proceedings is an unwarranted assumption not sufficient to establish irreparable injury. While plaintiffs may be sustaining some inconvenience and loss 'It does not appear from the record that petitioners have been threatened with any injury other than that incidental to every criminal proceeding brought lawfully and in good faith * * *'[3] Jeannette, supra, 319 U.S. 164, 63 S.Ct. 881.
 
 
 8
 Cases cited by plaintiffs as authority for granting injunctive relief are inapposite, since they do not involve collateral proceedings in state courts. In the instant action, usual criminal procedures with their constitutional safeguards were invoked, and there is no reason to believe defendants will not be respectful of the Federal Constitution and laws. As observed by the district court:
 
 
 9
 'As has been said so many times, there is no reason to assume, at this stage, that the Courts of Pennsylvania will not do justice. The Pennsylvania statute, which plaintiffs are alleged to have violated, has not been challenged here. It is not for this Court to assume that the proper standards will not be applied in the interpretation of that statute.'Whether City of Philadelphia is a proper party under the Civil Rights Act need not be resolved, since we find no ground for supposing intervention of a federal court in order to secure plaintiffs' constitutional rights will be either necessary or appropriate.
 
 
 10
 The order of the district court dismissing plaintiffs' complaint will be affirmed.
 
 
 
 [1]
 Act of 1939, June 24, P.L. 874, 524, as amended. 18 Purdon's Stat. 4524
 
 
 [2]
 28 U.S.C. 1343 provides in material part:
 'The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
 '(3) To redress the deprivation, under color of any State law * * * of any right, privilege or immunity secured by the Constitution of the United States * * *.'
 
 
 [3]
 Cf. Grove Press, Inc. v. Calissi, D.C.N.J., 208 F.Supp. 580, and Toth v. Gilbert, N.D.Ohio, 184 F.Supp. 163. In both cases complainants as businessmen suffered the same kind of inconvenience and possible financial loss plaintiffs herein are alleged to be suffering. In both cases, as in the present case, there is no suggestion the Federal Constitution and laws will not be respected by the state court