DALE BOOK COMPANY, Inc., a Pennsylvania Corporation, Plaintiff,

v.

Howard R. LEARY, Individually and as Commissioner of Police for the City of Philadelphia,

James C. Crumlish, Jr., Individually and as District Attorney for the City of Philadelphia,

Martin Weinberg, Individually and as Assistant District Attorney for the City of Philadelphia,

Clarence J. Ferguson, Individually and as Commanding Officer and Captain of the Special Investigation Squad of the Police Force of the City of Philadelphia,

Edmond Bivens, Individually and as Police Officer with the Special Investigation Squad of the Police Force of the City of Philadelphia,

Cecil Satterfield, Individually and as Police Officer with the Special Investigation Squad of the Police Force of the City of Philadelphia, Defendants.

Civ. A. No. 34466.

United States District Court
E. D. Pennsylvania.

Aug. 12, 1964.

Ethel S. Barenbaum and Herman M. Barenbaum, Philadelphia, Pa., for plaintiff.

Theodore H. Lunine, Asst. City Sol., Philadelphia, Pa., for defendants.

JOHN W. LORD, Jr., J.

Plaintiff, a Pennsylvania Corporation engaged in the wholesale distribution of nudist magazines, has commenced the present injunctive action under the Federal Civil Rights Statutes, 42 U.S.C.A. §§ 1983 and 1985, and 28 U.S.C.A. § 1343. Since all parties are citizens of Pennsylvania, plaintiff's initial attempt

to likewise assert diversity jurisdiction was unsuccessful. The asserted basis of such civil rights jurisdiction and the relief sought will be covered in the findings which follow.

Defendants are the various officials of the City and County of Philadelphia, identified in the caption, who took part in the seizure of publications distributed by the plaintiff, Dale Book Company, Inc. (hereafter to be at times referred to as Dale).

Defendants' Motion to Dismiss having been denied, the three-day hearing on preliminary injunction revealed the essential facts to be as follows.

On September 12, 1963, the District Attorney, James C. Crumlish, Jr., together with Assistant District Attorney, Martin Weinberg, caused the arrest of a newsstand operator at 18th and Arch Streets, Philadelphia, at which time, pursuant to search warrant, several thousand Dale nudist magazines were seized. On September 18, 1963, the Police Department arrested the same dealer at the same newsstand and seized an additional 218 nudist magazines. On October 1, 1963, arrests were made of 21 newsdealers and a distributor not a party to this action, and more than 2,000 nudist magazines, distributed by Dale, were seized in connection with the arrest. All these arrests and seizures were pursuant to the provisions of the Pennsylvania Obscenity Statute, 18 P.S. § 783.

Although Plaintiff in its complaint had attacked the constitutionality of the Pennsylvania Obscenity Statute last-mentioned, that attack was withdrawn during the course of argument on Defendants' Motion to Dismiss.

There was no evidence of prior threats, warnings or other orders relative to these arrests and seizures. Indeed, the testimony was entirely to the contrary as to the assertion of prior restraint (N.T. pp. 45–46, 128, 172, 189, 245 and 277), as appears in the specific findings which follow.

No officer of plaintiff was arrested for possessing or disseminating the nudist publications for which it is the distributor in this area. No nudist publications were seized from plaintiff. Indeed, no official action has ever been directed against plaintiff to prevent distribution of nudist publications. The arrest of Dale customers, the newsdealers mentioned above, have indirectly affected Dale in two ways. First, the dealers in Philadelphia are apparently afraid to buy Dale publications for fear of being arrested for violation of the Pennsylvania Obscenity Statute. Secondly, Dale is obligated by trade custom and practice to give the arrested dealers a credit for those magazines distributed by Dale which were seized on the three occasions already described. In turn, Dale has certain return privileges with the national distributors as to domestic publications, at least (N.T. p. 273). Finally, backdate publications in this field have a certain discounted sale value. The president of Dale, Mr. Silverberg, testified that such resale value would approximate 35% (N.T. p. 274).

Numerous exhibits have been submitted in addition to those introduced by plaintiff and defendants in the course of testimony. It was ruled at the hearing that examples of the seized periodicals to be submitted thereafter to the court should become part of the record (N.T. p. 269).

Plaintiff claims infringement on its civil rights by virtue of numerous violations of constitutional rights. In the view of this Court, however, the essential claims of deprivation to be considered are rights secured by:

First Amendment: free speech;

Fourth Amendment: search and seizure; and

Fourteenth Amendment § 1: due process of law.

Plaintiff earnestly asserts that the publications in question are free from any taint of obscenity, and seeks a declaration to that effect.

Defendants insist that there has been no violation of any civil right of plain-

tiff; and that the question of obscenity is not reached.

To this Court it appears that there is a further question: is this a matter in which a federal court should intervene at this stage in any event? This question, which is usually called the Doctrine of Abstention, in the opinion of this Court, seems to foreclose, in any event, a decision on the merits of the publications.

In order to make disposition of this case as complete as possible, however, three separate sets of findings will be made, covering the three sets of questions or issues for disposition. They will be discussed, however, in the following order: (1) Civil Rights; (2) Abstention; (3) Obscenity.

A recent decision of the United States Court of Appeals for the Third Circuit dealt with a seizure by the City of Philadelphia of a group of nudist publications similar to those in question here. Outdoor American Corporation v. City of Philadelphia, No. 14,697, 333 F.2d 963 (3rd Cir., 1964); affirming Outdoor American Corporation v. City of Philadelphia, No. 34316 (E.D.Pa., November 20, 1963, Legal Intelligencer, Dec. 6, 1963). The essential difference in that case was that the plaintiffs there were not only distributors but also publishers, and that one of the plaintiff distributors (as well as various newsdealers) was then under indictment for violation of the Pennsylvania Obscenity Statute. The plaintiffs in Outdoor sought the same kind of relief which is asked here, however. In affirming the District Court's dismissal of the complaint, the Court of Appeals observed that

"＊ ＊ ＊ All issues plaintiffs are raising in the federal court may be brought before the state courts, and there is no reason to believe state officials will enforce the Pennsylvania statute against plaintiffs not involved in state proceedings if the publications are found not obscene in the pending criminal prosecution. If held obscene, plaintiffs not involved in state proceedings cannot complain of enforcement of the stat-

utes. *Nor should a federal court of equity ambush the state courts by deciding the fundamental basis of obscenity.*" (No. 14,697, 333 F.2d 965, 3rd Cir., June 30, 1964, supra.) [Emphasis added]

In view of that statement, this Court approaches the question of obscenity with great reluctance. Only because no direct proceedings have been undertaken against Dale as was done in the Outdoor case does the court even consider the obscenity aspect. The distinction between the two cases, however, impelled the court to conduct a full hearing in the present case, and then to consider as an alternative or contingent ground the merits of the publications themselves.

Only in the event that it be determined that this Court is in error on the first part of the problem, civil rights, need the second be considered. Again, and only in the circumstance that there is error in this Court's conclusion that the situation in any event is not one for federal interference at this stage, do the findings in the third part concerning obscenity become in any way part of this decision.

## I. CIVIL RIGHTS

### Findings of Fact

1. Plaintiff, Dale Book Company, Inc., a Pennsylvania corporation, is a wholesale distributor of nudist magazines in Philadelphia and surrounding areas.

2. Defendants are Howard R. Leary, Philadelphia Police Commissioner; James C. Crumlish, Jr., Philadelphia District Attorney; Martin Weinberg, Philadelphia Assistant District Attorney; Clarence J. Ferguson, Philadelphia Police Captain and Commander of the Special Investigation Squad; Edmond Bivens and Cecil Satterfield, police officers assigned to the Special Investigation Squad; all are citizens and residents of Philadelphia, Pennsylvania.

3. On September 12, 1963, pursuant to orders of defendant District Attorney Crumlish, defendant Assistant District Attorney Weinberg and several detectives

from that office arrested Jerome Shapiro, a newsstand operator at 18th and Arch Streets, Philadelphia, Pennsylvania, and pursuant to a search warrant seized a large quantity of paper books and magazines, some of which were nudist magazines distributed by plaintiff. Shapiro was held for court, after preliminary hearing, for violation of the Pennsylvania Obscenity Statute, 18 P.S. § 783.

4. On September 18, 1963, Jerome Shapiro was again arrested, this time by officers of the Philadelphia Police Department, and 218 nudist magazines were seized from his stand at 18th and Arch Streets, some of which were publications distributed by plaintiff. Shapiro was again held for court on the same charges.

5. On October 1, 1963, 21 newsdealers were arrested by Philadelphia Police and pursuant to search warrants, 2,083 nudist magazines and calendars were seized from newsstands throughout the City, some of which magazines and calendars were publications distributed by the plaintiff. The 21 dealers were arrested and, after preliminary hearings, held for court on charges of violating the Pennsylvania Obscenity Statute, 18 P.S. § 783.

6. The only relationship between the plaintiff and the 22 newsdealers who were arrested is that the latter are purchasers from or customers of plaintiff who sells nudist magazines and calendars to them at wholesale. Those dealers and other customers of plaintiff have the privilege of returning for full credit unsold, damaged or destroyed nudist publications to plaintiff, which in turn has the privilege of returning all domestically published nudist periodicals (constituting more than 75% of all nudist publications distributed by plaintiff) to the national distributor thereof for partial reimbursement (N.T. pp. 273–275).

7. Since the arrests on October 1, 1963, neither plaintiff nor its newsdealer customers have purchased or sold any nudist magazines in Philadelphia solely because of their fear of being arrested for violation of the Pennsylvania Obscenity Statute.

8. No action has been undertaken by the defendants against plaintiff corporation and none of its officers or employees has been arrested for the possession or sale of nudist publications, at any time pertinent to this action, by defendants or any other officials or employees of the City of Philadelphia.

9. No nudist publications or any other publications have been seized or taken from the plaintiff by defendants or any other City officials or employees at any time pertinent to this action.

10. Neither the defendants nor any other officials or employees of the City of Philadelphia have ordered, warned or instructed plaintiff or any newsdealers to refrain from selling nudist publications.

11. Neither the defendants nor any other officials or employees of the City of Philadelphia have imposed any prior restraints on the dissemination of nudist publications by the plaintiff or any newsdealers who purchase such publications from the plaintiff.

### Discussion

So much of this ground was covered in the case cited earlier that discussion will not attempt to explore all phases of the legal questions involved. Outdoor American Corp. v. City of Philadelphia, No. 14,697, 333 F.2d 963 (3rd Cir., 1964), affirming No. 34316 [same caption] (E. D.Pa., Nov. 20, 1963, Legal Intelligencer, Dec. 6, 1963).

■ Beyond question, plaintiff is suffering financial loss while the criminal prosecutions against its customers are pending in the Pennsylvania courts. Prior to the seizures from the newsstands, plaintiff sold regularly to 150 customers in Philadelphia (N.T. p. 271). Total volume of Dale's Philadelphia sales of periodicals retailing up to $1.50 per copy was 30,000 to 50,000 per month (N. T. p. 283). Gross profit was in the vicinity of $5,000 per month (N.T. p. 289). In itself, such inconvenience and possible financial loss is no ground for federal intervention. Outdoor American, (No. 14,697, 3rd Cir.) supra, 333 F.2d p. 965, citing Douglas v. City of Jeannette, 319

U.S. 157, 164, 63 S.Ct. 877, 87 L.Ed. 1324 (1943) and adding in footnote "Cf. Grove Press, Inc. v. Calissi, D.C.N.J., 208 F.Supp. 580, and Toth v. Silbert, N.D. Ohio, 184 F.Supp. 163. In both cases complainants as businessmen suffered the same kind of inconvenience and possible financial loss plaintiffs herein are alleged to be suffering. In both cases, as in the present case, there is no suggestion the Federal Constitution and laws will not be respected by the state court."

Plaintiff relies heavily upon In re Louisiana News Company v. Dayries, 187 F.Supp. 241 (E.D.La.1960). In that unusual case, under color of the Louisiana statute, the police had made wholesale seizures of the complete stock of 28 or more publications from the warehouse and newsstands. There was no pretense of a search for pornography; the police officers had been sent out to confiscate borderline material—that which displayed female breasts, or the buttocks of the male as well as the female. There was no shadow of observance of the settled principle that mere nudity is not an appeal to prurient interest. See Sunshine Book Co. v. Summerfield, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed.2d 352 (1958). The Roth test was disregarded. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Accordingly, return of copies of the periodicals not necessary for use in the pending state criminal prosecutions was ordered, and the officials were preliminarily enjoined from seizures under "a test so irrational". In re Louisiana News Company v. Dayries, 187 F.Supp. 241, 247 (E.D.La. 1960).

That case is inapplicable, since the evidence is clear that the defendant police officers in the present case had been properly instructed as to the legal standards of obscenity (N.T. pp. 17–76; 140–172). More particularly, the seized material was inspected by the defendant Assistant District Attorney and found by him to be obscene, his conclusions being based upon the standards enunciated by the United States Supreme Court, with particular reference to Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The witness, defendant Assistant District Attorney Martin Weinberg, had been in charge of the Obscenity Unit of the District Attorney's office for some time prior to the seizures, and satisfied the Court as to his expertise in the field (N.T. pp. 197–203). Thus there was no element of the "irrational test" of the Louisiana News case (supra) present in these instances.

Among the cases also relied upon by plaintiff are Marcus v. Search Warrants of Property, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); Royal News v. Schultz, Civil No. 23094, 230 F.Supp. 641 (E.D.Mich., S.D., 1964); Manual Enterprises Inc. v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed. 2d 639 (1962); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L. Ed.2d 584 (1963); and Sunshine Book Co. v. Summerfield, 355 U.S. 372, 78 S. Ct. 365, 2 L.Ed.2d 352 (1958).

Since the foregoing cases are well-known in this field, the full caption will not be repeated in the following brief comments.

The Marcus case struck down an invalid Missouri statutory procedure which had been held good by the Missouri Supreme Court. 367 U.S. 717, 81 S.Ct. 1708 (1961). Plaintiff has withdrawn its attack on the Pennsylvania Obscenity Statute which, incidentally, does not contain the infirmity which was under fire in the Marcus case.

In the Mapp case, obscene material was seized in the course of a search for a certain fugitive, and a search for gambling material. Existence of a search warrant of any kind was never satisfactorily proved. An Ohio conviction, upheld by the Supreme Court of that state, was set aside. 367 U.S. 643, 81 S.Ct. 1684 (1961). Not only has there been no conviction in the present case, but also it was not proved that the search warrants were invalid (N.T. pp. 206, 227, 238).

In Smith v. California the proprietor of a bookstore had been convicted by a municipal court for violating a city ordinance which was construed by the state courts as making him absolutely liable criminally for the mere possession of a book later judicially determined to be obscene—even if he had no knowledge as to the contents of the book. The state appellate division affirmance of that conviction was set aside on the ground that the ordinance, as construed and applied, violates the freedom of the press which is safeguarded by the Due Process clause of the Fourteenth Amendment. 361 U. S. 147, 80 S.Ct. 215 (1959). To state that holding is to demonstrate the inapplicability of that case here.

In Royal News v. Schultz, Civil No. 23094, 230 F.Supp. 641 (E.D.Mich., S.D., 1963), on motion for summary judgment, after citation of the Roth case, it was

"ORDERED AND ADJUDGED that none of the various issues of the magazines enumerated in the annexed Exhibit 1 constitutes hardcore pornography or is obscene or is otherwise subject to governmental suppression, consistent with the guarantees of the Federal Constitution."

Plaintiff has pressed upon the court, attaching copies to its proposed findings, a certified copy of the foregoing order, together with 11 copies of certain of the magazines involved in that order, which are designated as "Attachment B". None of those 11 issues are involved in the present case. It is true that in eight instances the Royal News periodicals are of the same title as those which were submitted by plaintiffs as examples of the seized periodicals or which were admitted into evidence as exhibits at the hearing. Insofar as there is coincidence of title (although not of date), the Royal News examples are earlier issues. Since the merits are not reached in the present stage of discussion, comment by way of comparison will be limited to one seemingly significant point—that the later

(Dale) issues are patently less discreet (if that term may be applied to either), than the earlier (Royal News) ones.

While courtesy would compel this Court to consider the evaluation of a judge of another district were the same magazine issues involved in the present case, that factor is not present. Therefore, we need not speculate as to how the case was presented to that court except to say that without knowing more of the circumstances, the order would be of little persuasive effect.

For that matter, however, a more recent case has come to hand from the same court, and also involving the Royal News Company. Olsen v. Doerfler, 225 F.Supp. 540 (E.D.Mich., S.D., 1963). Its specific holding was simply that a proceeding under the Michigan obscenity statute was not subject to removal to the federal court. Part of the basis of alleged federal jurisdiction was the allegation that the Michigan obscenity statute was subject to a reading that it was unconstitutional under Manual Enterprises, Inc. v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962) and Marcus v. Search Warrants, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). After quoting from Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355 (1941), the court pointed out that if it is possible to read a state statute to

" * * * avoid a constitutional question, the Federal court should give the state courts an opportunity to interpret the statute."

For the present discussion, the case is of interest as an indication that plaintiff's Royal News case was perhaps not the last word on that subject. Incidentally, however, it bears upon the doctrine of abstention which will be discussed as an alternate to the present ground.

Manual Enterprises, Inc. v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962) concerned a Post Office ruling barring, under federal statute, petitioner's homosexual magazines from the

mails. Decision was limited to narrow grounds:

"In conclusion, nothing in this opinion of course remotely implies approval of the type of magazines published by these petitioners, still less of the sordid motives which prompted their publication. All we decide is that on this record these particular magazines are not subject to repression under § 1461."

The Manual Enterprises case is significant only if the merits of the publications at hand must be reached. For that matter, defendants have no quarrel with the criteria of obscenity elaborated in that case.

Bantam Books involved an obvious form of censorship by a Rhode Island Commission, which deliberately set about to achieve the suppression of publications deemed objectionable. 372 U.S. 58, 83 S.Ct. 631 (1963). In that case Mr. Justice Brennan pointed out the distinction between a system of prior restraints or censorship and criminal sanctions surrounded by the procedural safeguards of criminal process, 372 U.S. 58, 69–70, 83 S.Ct. 631, 639:

" * * * The Commission's operation is a form of effective state regulation superimposed upon the State's criminal regulation of obscenity and making such regulation largely unnecessary. In thus obviating the need to employ criminal sanctions, the State has at the same time eliminated the safeguards of the criminal process. Criminal sanctions may be applied only after a determination of obscenity has been made in a criminal trial hedged about with the procedural safeguards of the criminal process. * * * "

In his dissenting opinion, Judge Harlan used the following language which is squarely applicable to the instant case, 372 U.S. 58, 81, 83 S.Ct. 631, 645:

"It could not well be suggested, as I think the Court concedes, that a prosecutor's announcement that he intended to enforce strictly the ob-
scenity laws or that he would proceed against a particular publication unless withdrawn from circulation amounted to an unconstitutional restraint upon freedom of expression, still less that such a restraint would occur from the mere existence of a criminal obscenity statute. * * * "

The entire thrust of plaintiff's argument on censorship here boils down to the contention that the deterrent effect upon the dealers in Philadelphia resulting from the arrests, and the seizures of nudist publications from some of them, constitute a type of censorship or prior restraint. The quoted language negates that contention. See also Four Star Publications, Inc. v. Erbe, 181 F. Supp. 483 (S.D.Iowa 1960).

The last of the cases listed by plaintiff is Sunshine Book Co. v. Summerfield, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed.2d 352 (1958). Plaintiff's Exhibit P–40, called a Collector's Item at the hearing, shows the 1955 publications which were upheld as legitimate nudist publications and not obscene. Without going into the merits, one may observe in passing that even the plaintiff's witness, A. Z. Silverberg, President of Dale, was hard-pressed to account for the "evolution in the nudist publication industry" since the 1955 decisions (N.T. p. 298). Comparison of the 1955 publications involved in the Sunshine case with the seized periodicals, however, will also be reserved for the contingent discussion of the merits of the publications.

Plaintiff has argued that a certain book-burning conducted by a Pastor W. Carter Merbreir was part of a scheme or conspiracy by defendants in the nature of a prior restraint. On the witness stand, the District Attorney denied, without contradiction, any part in the planning or conduct of that ceremony (N.T. p. 174). Nor was it shown that he had any part in the newspaper publicity which followed that affair (N.T. p. 175).

It is true that Police Commissioner Howard R. Leary was in brief attend-

ance at the affair. It was not shown, however, that he instigated the meeting in any way, or that he took part in the reported book-burning. More particularly, there was no evidence whatsoever that any of plaintiff's publications were involved in Pastor Merbreir's ceremony (N.T. pp. 113–119).

The foregoing discussion, insofar as it involves findings of fact and conclusions of law, is to be deemed incorporated in the Findings of Fact heretofore stated, and the Conclusions of Law which follow:

### Conclusions of Law

■ 1. The arrests by defendants of 22 of plaintiff's customers for violations of the Pennsylvania Obscenity Statute and the seizure from them of nudist magazines which they had purchased from plaintiff do not constitute the unlawful arrest of plaintiff or the unlawful seizure of plaintiff's property under the Fourth and Fourteenth Amendments to the Constitution of the United States.

■ 2. Plaintiff has no standing to challenge the constitutionality of the arrests of and seizures of nudist publications from its 22 customer-dealers on September 12 and 18 and October 1, 1963.

3. Defendants have engaged in no actions effecting a prior restraint on or censorship of the nudist publications distributed by plaintiff.

4. Defendants have engaged in no actions suppressing the dissemination of nudist publications distributed at wholesale by plaintiff and sold retail by its customer-newsdealers.

■ 5. Defendants have engaged in no actions constituting a violation of plaintiff's freedom of speech and press as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

■ 6. The deterrent fear of future arrests for selling nudist magazines caused by knowledge of arrests already made for selling such publications on charges of violation of the State Ob-scenity Statute, does not constitute censorship or a prior restraint in violation of the First Amendment's guarantee of freedom of expression.

■ 7. Plaintiff has failed to prove its deprivation under color of state law of any rights secured by the Constitution of the United States and, therefore, has failed to prove its right to relief under the Federal Civil Rights Acts, 42 U.S.C.A. §§ 1983 and 1985; 28 U.S.C.A. § 1343.

In the light of the foregoing Findings of Fact and Conclusions of Law, and for all the reasons stated in the foregoing discussion, it is the opinion of this Court that plaintiff has shown no grounds for relief in this Court on the basis of a violation of its Civil Rights. The plaintiff's petition for preliminary injunction and other relief will accordingly be denied, the complaint dismissed, and judgment entered in favor of defendants, and it is so ordered.

## II. ABSTENTION

In the circumstance that this Court has overlooked some possibility of infringement of the Civil Rights of the plaintiff, in that the acts of defendants have in some way infringed the freedoms and liberties guaranteed to plaintiff by the Constitution of the United States, certain Findings and Conclusions will be made in addition and in the alternative.

Analysis of the seven cases stressed by the plaintiff and discussed heretofore contain factors in common. The majority are instances in which the United States Supreme Court has acted with reference to a *state's final and definitive interpretation* of a statute of that state. Marcus, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); Mapp, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Smith, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), and Bantam Books, 372 U.S. 58, 83 S.Ct. 631, 9 L. Ed.2d 584 (1963).

Then two of the cases are exclusively federal, being reviews of federal postal rulings, Manual Enterprises, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962)

and Sunshine Book, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed.2d 352 (1958).

The remaining case is the District Court order in Royal News v. Schultz, Civil No. 23094, 230 F.Supp. 641 (E.D. Mich., S.D., 1963) about which enough has been said to show that it is not persuasive, much less binding, in the present instance.

In the other direction, the cases already cited in discussion demonstrate the extreme reluctance of the Courts of the United States to interfere in state proceedings. Outdoor American Corp. v. City of Philadelphia, No. 14,697, 333 F. 2d 963 (3rd Cir. 1964), and cases cited therein.

Inconvenience and possible financial loss is no ground for federal intervention, in the absence of a showing of irreparable injury not compensable in money damages. Douglas v. City of Jeannette, 319 U.S. 157, 164, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Grove Press, Inc. v. Calissi, 208 F.Supp. 580 (D.N.J. 1962); Toth v. Silbert, 184 F.Supp. 163 (N.D.Ohio 1960).

Full discussion of the question is contained in the recent Royal News case cited. Olsen v. Doerfler, 225 F.Supp. 540 (E.D.Mich., S.D., 1963), citing and discussing Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355 (1942) and other leading cases.

Since the governing principles have been enunciated, within the last two months, by the Court of Appeals for the Third Circuit, further discussion seems superfluous. Outdoor American Corp. v. City of Philadelphia, No. 14,697, 333 F.2d 963 (3rd Cir., 1964).

### Findings of Fact and Conclusions of Law

1. Plaintiff has shown no threatened irreparable injury, great and immediate, which cannot be compensated in money damages.

2. Plaintiff has not shown that its rights have been abridged by any final action of the Commonwealth of Pennsylvania.

3. Plaintiff has not shown that the Courts of Pennsylvania are not open to it for any civil remedies to which it may be entitled.

4. A federal court will not assume, at the threshold of a state criminal proceeding, that the Courts of Pennsylvania will not do justice.

5. A federal court, in the exercise of its discretion, will not interfere in pending state proceedings on the assumption that a Pennsylvania statute will be interpreted unconstitutionally.

Accordingly, in the exercise of its discretion, this Court will abstain from granting a preliminary injunction and granting other relief sought by the plaintiff in view of pending Pennsylvania criminal proceedings involving the subject matter of this suit.

On these additional and alternative grounds, accordingly, the plaintiff's petition for preliminary injunction and other relief will be denied on the ground of Abstention, the complaint dismissed, and judgment entered in favor of defendants, and it is so ordered.

### III. OBSCENITY

The Court repeats:

" * * * All issues plaintiffs are raising in the federal court may be brought before the state courts, and there is no reason to believe state officials will enforce the Pennsylvania statute against plaintiffs not involved in state proceedings if the publications are found not obscene in the pending criminal prosecutions. If held obscene, plaintiffs not involved in state proceedings cannot complain of enforcement of the statutes. *Nor should a federal court of equity ambush the state courts by deciding the fundamental basis of obscenity.*" (Outdoor American Corp. v. City of Philadelphia, No. 14,697, 333 F.2d 963 (3rd Cir., 1964). [Emphasis added.]

Plaintiff, however, not only asks, but actually insists upon a declaration by this Court as to the alleged non-obscenity

of their publications. Indeed, most of the cross-examination of defendants and other witnesses was directed to that point. In addition, expert witnesses for both sides testified on that score as well (N.T. pp. 200, 315). In addition to exhibits at the hearing, a list of 26 publications has been submitted by plaintiff as "Attachment A", as amended, together with other illustrative examples of nudist publications including the Royal News periodicals heretofore mentioned (as Attachment B).

If this Court is correct in its Findings of Fact, Conclusions of Law, and rulings of parts I and II of this Opinion, the issue of the obscenity of plaintiff's seized publications is not in the case. In such circumstance, it would be gratuitous to pass judgment upon those periodicals. Furthermore, to do so might be to "ambush the state courts by deciding the fundamental basis of obscenity" in violation of the pronouncement of the United States Court of Appeals quoted at the outset of this part of the present opinion. Outdoor American, etc., No. 14,697, 333 F.2d 963 (supra).

However, and only to avoid incompleteness and possible remand for further findings, the following device is adopted. Findings of Fact and Conclusions of Law on this phase of the case will be stated against the possible contingency that the foregoing parts I and II, of this Opinion, are in error.

These part III Findings and Conclusions become part of this Opinion only in the event that it should be found, by a higher court, (I) that the civil rights of plaintiff have been violated, and (II) that this Court, in the exercise of its discretion, was not entitled to abstain, in any event, from action which might well abort the pending state proceedings.

Otherwise, on the basis of the orders contained in Part I, or in the alternative, in Part II, of this Opinion—Part III herein is not a part of this Opinion and may be disregarded.

In any circumstance, the following is not to be taken as a prejudgment of any proceedings in the Pennsylvania state courts. The criteria under which these publications are evaluated are stated in cases decided by the Courts of the United States only, and in cases involving Federal and not exclusively state questions.

To emphasize the present point, Conclusions of Law will precede Findings of Fact in this Section.

### Conclusions of Law

1. Obscene publications are not protected by the constitutional guarantees of freedom of speech and the press.

2. Sex and obscenity are not synonymous.

3. The first test of obscenity is "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest."

4. In addition, obscene publications are publications found to be patently offensive, that is, "so offensive on their face as to affront current community standards of decency."

5. The United States Supreme Court has approved the following form of words descriptive of the foregoing tests: "A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest * * * and if it goes substantially beyond customary limits of candor in description or representation of such matters." Manual Enterprises, Inc. v. Day, 370 U.S. 478, 485–486, 82 S. Ct. 1432, 1436, 8 L.Ed.2d 639 (1962).

6. Plaintiff has submitted examples of its publications en masse, seeking a declaration that none of the publications are obscene. In several instances, issues have been listed as Exhibits or "Attachments", but not supplied. In other instances, issues not listed as Exhibits or "Attachments" have been submitted. In this circumstance, and in the light of the manner in which enormous quantities of these publications have been sold openly on the street news-stands of Philadelphia, the publications will be "taken as a whole." It is not the duty of a court of equity of the United States to separate

the more offensive from the less offensive. In judging the material as a whole, on the present record, its mass impact upon the entire community is considered rather than the prurience of any particular page of any individual issue.

7. The findings of fact which follow are not to be construed, accordingly, as approval of any exhibit or specimen submitted as to which specific items or pages are not found as a fact to be obscene.

8. Twenty-five issues of periodicals, specimens of material seized by the City of Philadelphia as heretofore recited in Findings of Fact, taken as a whole, as sold *en masse*, openly and indiscriminately on the streets of Philadelphia, are obscene publications and therefore not entitled to protection under the constitutional guarantees of freedom of speech and the press, under the tests recited in the foregoing conclusions of law.

*Findings of Fact*

In the following findings as to specific exhibits, the tests stated in the above Conclusions of Law have been applied in each case to the 25 publication-issues in question, and the following statement is to be deemed part of the finding in each instance as fully and completely as though repeated in each instance:

"This item is obscene because to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests; it is patently offensive; it goes substantially beyond the customary limits of candor in representation; it is part of a mass merchandising system of a magnitude on the order of 30,000 to 50,000 of such books sold monthly by plaintiff alone in the City of Philadelphia; they are or were openly and indiscriminately displayed and sold on the streets of Philadelphia to persons of all ages; and in the context of such quantity, notoriety, and lack of discrimination; and on the record in the present case, wherein the periodicals are submitted for evaluation as a whole, must be considered in the light of the mass impact of the whole volume of publications and not in isolation."

1. LEISURE LIVING. Vol. 1, No. 1. See especially pages 2, 29, and center spread. In addition to the pages listed, the majority of the photographs are patently offensive.

2. CONTINENTAL NUDIST. Vol. 1, No. 1. See especially center spread and the offensive material pages 32–40 inclusive.

3. NUDIST COLORAMA. No. 1. Exhibit D–1. See especially page 2 showing nude females and clothed males. The color reproductions of nudes, reclining, seated and supine on pages 6–11 go beyond customary limits of candor. The female external genital organs are too prominent in the representation on pages 14, 27, 34, center spread pages 36 and 37 and elsewhere. The appeal to prurient interest is indeed manifest in this item which significantly retails for $2.00.

4. ELYSIUM '64 CALENDAR. Exhibit D–2. In this periodical, there is a pin-up type illustration for each month. The poses almost without exception are unnecessarily suggestive. Prominence of the female pubic area is remarkable throughout.

5 and 6. SUNDIAL. Nos. 14 and 15 (Vol. 2, Nos. 8 & 9), respectively. In the first, see left col. p. 6, the center spread, and pages 21 and 22 for examples which overreach customary limits of candor in photographic reproduction of the female, with especial reference to the external genitalia and mammary apparatus. In the second, pages 17 and 21 are likewise notable.

7. SUNDIAL 1964 Calendar. To be distinguished from the ELYSIUM Calendar (Item #4 supra) only in that the closeup, "unretouched and unaltered" color photography of very young models is particularly and brutally frank.

8. NUDE LIVING. #18. Exhibit P–2. The Court agrees with the witness, Captain Ferguson, who found certain il-

lustrations, in particular, to be objectionable, marking the same in red pencil (N.T. pp. 143–164).

9, 10, 11. URBAN NUDIST No. 7, No. 8 and 1963 Calendar, respectively. Showing nudism in the city, frequently indoors, this periodical seems to the Court particularly offensive. In addition to the over-graphic representations of female anatomy, if not gynecology, mentioned as to earlier-listed items, there is the offensive element of extremely bad—almost grotesquely bad—taste in the indoor scenes.

12. TODAY'S NUDIST. No. 2. This is a mixture of extremely bad taste to the point of patent offensiveness (p. 36); voluptuous models (Cover, pages 29, center spread, 37 and 45, e. g.); and over-boldness in pose and detail of photographic closeups (p. 35).

13, 14 and 15. NUDIST PHOTO FIELD TRIP NO. 6; SUN ERA NO. 7; SUNSCOPE Vol. I, No. 2. These three publications, all from North Hollywood, California, are of the same order as TODAY'S NUDIST, Item #12 above. They present the same mixture of objectionable features described in Item #12, and reference to specific pages is unnecessary. They speak for themselves.

16, 17 and 18. SUN MAGAZINE, Vol. 13, No. 3; SUN ANNUAL, No. 2; SUNSHINE & HEALTH, No. 3. These three, the remaining domestic publications presented, were published by the Sunshine Publishing Co. of Mays Landing, N. J. Had they been the only exhibits, the ruling of this Court would have been different. There was testimony that this publisher is in bankruptcy (N.T. p. 299), and that its publications are valued at 4¢ each by the Referee in Bankruptcy (N.T. p. 287). It is clear that these items are of no consequence in the present proceeding.

19, 20, 21, 22, 23, 24 and 25. HELIOS #122 (Denmark); SUN & HEALTH, Sept., Oct., Nov. 1963 and 1963 ANNUAL (Denmark); SUNDECK No. 111, Aug., 1963; and GYMNOS No. 165, Oct., 1963 (West Germany). These items comprise five issues of two Danish periodicals and one each of two from West Germany. These are lesser items in plaintiff's case, since (as has already been noted in Finding of Fact No. 6 of Part I herein) more than 75% of plaintiff's business is in the domestic publications.

These foreign publications are of a character noticeably different from that of the Hollywood type of periodical described in the first 15 exhibits. In some respects they are less objectionable than the larger, more brilliantly colored, and generally more sensational American ("Hollywood") ones. In other aspects— with particular reference to the mass exhibitions of raw male nakedness which characterize the European products— they may be more offensive.

The ground rules of these findings, however, are the terms on which the case was submitted by plaintiff: take them or leave them as a whole. It is with no regret, accordingly, that the Court accepts that invitation and leaves the publications (and the plaintiff) where they were at the outset of these proceedings. All the exhibits are tarred with the same brush in the present situation; these import items must be held subject to the same finding of obscenity that is incorporated in each and every separate finding of fact herein.

Now, therefore, this 12th day of August, A.D. 1964, it is the ruling of this Court, on the ground that the seized publications as shown in the foregoing Exhibits are obscene and entitled on the present record to no protection by a Court of the United States in the instant case; that the petition of Dale Book Company, Inc., Plaintiff, for Preliminary Injunction and other relief is denied; the complaint will be dismissed, and judgment entered for defendants; and it is so ordered.